Tri-Power Resources, Inc. v. City of Carlyle, Illinois Richard Boutin, Appellate Interlocutory Appeal Richard Boutin, Appellate Richard Boutin, Appellate Richard Boutin, Appellate Richard Boutin, Appellate Richard Boutin, Appellate Richard Boutin, Appellate  Richard Boutin, Appellate The Oil and Gas Act provides municipal license only. And there is a dovetail provision of the Municipal Code which provides that a municipality may impose restrictions upon oil and gas operations within the municipal limits. There is, to my knowledge, no such similar provision across the campus. And therein could lie an issue as to why that issue is not being addressed. But in this particular case, this is a question of law certified for appeal. It's the standard of review is de novo. The argument by the appellate is not that the state has completely occupied the field and that municipalities have no role whatsoever. And I think there's some confusion on that point. The argument is that the role of municipalities is limited to imposing reasonable rules and regulations pursuant to the provision of the Municipal Code authorizing them to do so. When you're dealing with a municipality, you always start, or with a non-home rule municipality, you always begin with Dillon's Rule, the analysis under the Illinois Constitution that non-home rule units only have those powers that have been expressly granted to them by the Constitution and by the statute. There is no presumption of authority to act. The opposite is true. A non-home rule municipality must find a source of its authority to do something in a specific statute. Now, these two statutes are the only two statutes in Illinois that address the issue of oil and gas operations within municipal limits. In this particular case, my essentially whole argument is that the reason why the state requires you to demonstrate the consent of the local municipality when you make application to the state is to make sure that you have complied with those local rules and regulations. And if you comply with those local rules and regulations, you are entitled to consent. The consent cannot be withheld. There is a case that is the Simpkins v. Village of Kincaid where the driller, the Village of Kincaid had several regulations regarding drilling operations. And the driller made every effort to comply with them. And the city was dragged, the village was dragged out of the wood grants permit, wood grants permit, finally filed a petition for mandates. And the court entered a judgment notwithstanding the verdict is a matter of law. Finding that he was entitled to a permit because they said he's done everything he's supposed to do. He's met every condition that you lawfully have the right to impose. And you cannot withhold the consent. Despite the permissive use of the word may in the municipal code, it is purely a ministerial function. Where he's done what he's supposed to do, you have to issue the permit. In this case, there are no local regulations to comply with. And my position is the same. Where there are no, in the absence of local regulations, the municipality does not have the discretion to withhold that consent. And that if they did withhold it, it could be compelled by way of mandamus, as was the case in the Simpkins case. In this particular instance, the city chose for whatever reason, perhaps they just weren't aware of it, not to enact any regulations concerning the operation of long gas wells. For example, you could say, if this is in a residential area, you may need to guard the pump jacks because we believe children are going to be present. Or you ought to have electric motors instead of gas motors. There's things like that you can do. That wasn't done. In our case, consent is impossible. And there's no way, much that the city has also raised the issue that we didn't go back and get a new permit, our permit is expired. That's true, but there's no way we can get a permit. Because to get a permit from the state, it's the next thing to the city. We've got to show their consent. Under the current zoning laws, it's impossible to do that. So trying to get a new permit as a no would be a meaningless act. It would be a futile effort. It's impossible to do that. And that is the essential essence of our appeal. Is there a case that specifically supports your proposition that the city can regulate but not prohibit? This, to my knowledge, is the first case in this state dealing with this specific issue. I wish I could say otherwise. We've got cases that we have principles that we can utilize. But this issue, there is no case on all fours with this one. In this context. Now I believe, as our position is, is that the rules of construction is that these two statutes are specific and on point as opposed to the zoning statutes, which are more general in nature. The legislature specifically granted authority to municipalities with regard to oil and gas operations. And these two statutes, they should be construed together in a harmonious fashion to say, when you're drilling within municipal limits, you have to comply with those local regulations. That's, I believe, to be a reasonable construction of these two statutes together in perimaterial. That is really all the further the court needs to go to rule on this case. These are the two specific statutes. Now, where the case kind of then goes is there's been a lot of different statutes that have been posited as potential sources of authority to the city to prohibit. And the main one is the zoning statute. There are certain rights to regulate the uses and industries and trade within municipal limits. The statute doesn't say the city is not allowed to not consent. Correct. But I think the sentence case says where they've complied with those all conditions, permission has to be granted. It's purely a ministerial act. There is no discretion on the city to withhold that consent. And again, my point is where no conditions exist, the same rule of law must apply. How can that be harmonized with the ability of the municipality, non-home rule municipality, to regulate? Well, I don't know that it can be. I mean, the harmony is built into the municipal code, not through the zoning statute, but through this specific statute right here that says they can impose restrictions. It doesn't say they can prohibit. It says they can impose restrictions. That is my very point. When you get to the general zoning statutes, those are more general in nature. I believe the more specific controls over the general, but with regard to those general zoning statutes, when you look at the right that's granted to non-home rules in the municipal code, there are several enumerated powers. And this issue came up in the Olympia Fields case. And even assuming that you don't accept argument number one, that these statutes are more specific, those control, and you say, well, let's look at these zoning laws. The Olympia Fields case says even in that case where the municipality has the authority to enact zoning regulations, they cannot enact, they cannot prohibit a state-licensed sanctioned activity. The Olympia Fields case involved a home daycare, and the plaintiff sought to open up a daycare in a residential area. That was not a permitted use in a residential area. And the plaintiff sought and obtained through DCFS a license to operate a home daycare facility. Now keep in mind that daycare facilities don't have specific legislation dealing with the right of the municipality to regulate. So we were dealing there just with the zoning authority and the interplay between the zoning authority and the state's regulation of daycare facilities through DCFS. And the Illinois Supreme Court in that case said that where there is a conflict, where you have a local ordinance essentially overriding the state law and the state agency's administrative licensure, that that is improper. And it's dropped the ordinance and allowed the plaintiff to move forward because it turns the logic of the regulatory scheme on its head. We have a specific administrative agency with expertise in a particular area that has a comprehensive set of regulations dealing with a particular area, mainly child care in that instance, and they have said it is permissible and allowable to do so. You, the local community, cannot exclude or prohibit that because it would be contrary to the laws and public policy of the state to do so. You would essentially have local law preempting the state, which is the reverse of the logic, which I believe applies. In the field of oil and gas, we likewise have an administrative agency named the Department of Natural Resource, which has comprehensive regulation of the oil and gas operations from cradle to grave, from the application of permit to drill to plugging and abandonment to reclamation of the surface. These are the regulations. There's a lot. That administrative agency was created for a reason, with an area of expertise. I'm not saying that the city doesn't have any authority. I'm saying they have concurrent jurisdiction to regulate, to impose conditions. If there's a safety concern that should be addressed in a particular district or zone, they can do that. What they can't do is just say, no, can't do it anyway. Keep in mind, your owners, when you're dealing with zoning and surface use issues, if you own a piece of property and they say you can't use it for this purpose, you can use it for another purpose. If you're a person who wants to engage in a particular activity and they say, well, you can't do it here, you can do it over there. When you have a separate mineral interest underlying a tract of real estate, the only means of enjoying that estate, it's a separate, defeasible estate in real estate, that mineral estate, is to drill a well. And the only right you have is to locate the wellhead on the surface of that tract. You don't have a right to go somewhere else and use somebody else's property to reach those minerals. You have an implied easement as a matter of law to use so much of the surface as is reasonably necessary to extract the minerals which lie beneath it. Now, when you're dealing with a separate mineral interest, there is no other option. You can't go somewhere else to develop those minerals. Those minerals are where they are. And that's just a unique nature of the divisibility and severability of minerals from the surface. And when you're dealing with fugacious minerals such as oil and gas, and the way in which they're produced, it is a square peg, Your Honor. Oil and gas is, in many respects, a real estate law. And one of the challenges is, how do we deal with that? It doesn't fit nicely into a lot of the zoning cases that we read and we see because of the unique nature. That's the challenge, is applying these existing principles to this new surface. But you say this is a case of first impression, but you cite Simpkins, which seems to say what you're saying, is that they have the right to regulate but not prohibit. Simpkins... In Simpkins, the village at Kincaid had ordinances which had requirements or conditions imposed upon the drilling. It was not a prohibition. So that is the difference. I believe that the holding of Simpkins applies with equal force here, but there is a different factual distinction in that the village at Kincaid did not prohibit drilling everywhere. It just imposed several conditions which they were reluctant to agree to. And as I said, even if zoning authority applies, we've got two separate arguments, this argument here, but even if zoning authority applies, you still have the Olympia Fields issue with local regulation preempting the state regulation. In this case, the interaction of local and state regulation comes about both through the interaction of these two statutes. You also see it in what I call well spacing, in an issue which is where can you locate a well? Because obviously in an urban area, a more densely populated area, that's a concern. Under IP&R spacing regulations, you have to be 330 feet from the boundary. So if you're on 10 acres, that's one point. Because if it's 660 square, 20 acres, you have a line, 40 acres. So by your regulations, limit where you can be. In a municipality, that would be in the middle of an intersection or something. So there's a provision of the IP&R race that says, okay, when that's the situation, you can get a modified drilling location. We take those issues into consideration in granting you a variance from your normal drilling location. So that's an example of how local conditions are taken into consideration by the administrative agency when it issues a program. In this case, if you allow the zoning statute and the authority granted to non-home rules to prohibit drilling, that would render both this statute and this statute meaningless. They're subsumed within it. We're letting the general zoning power control it, and these two are meaningless. My point is reversed. There's a reason why it's not addressed in the zoning statutes, but this was addressed in this statute. That's why it's not there. And I think as a general proposition, you don't construe statutes in a way which render other statutes superfluous or meaningless or annullable. And in this case, I think if you interpret the statute the way the city interprets it, you render not only these two statutes annullable, essentially you render the ID&R grades annullable within, prospectively, every municipality in the state. And one of the things about the department is they regulate waste. Waste is underutilization of resources. The state has an interest in utilizing resources. And if municipalities can just ban it, that's going to result in a non-utilization of resources in a significant part of the state. Moreover, if municipalities can ban it in municipal limits, I don't know why they couldn't ban it in the buffer zone, which extends beyond it. I don't know why counties couldn't ban it. I mean, it's a different statute. But you see where this is headed, is if you allow a municipality, especially a non-home rule municipality, to legislate on the subject contrary to the DNR regs and contrary to state law and that administrative agency, we've got the tail wagging the dog. Thank you. Thank you for the opportunity for rebuttal. Good afternoon, Your Honor. I'd like to step over here and point something out. This statute is the one that we say allows the city to have some regulatory authority, and it basically pertains to the safety of property. It's a one-sentence statute that was adopted in the 30s. It's never been amended. It's really not currently very appropriate to what we're talking about. The 225-9 MCS 7213, the Oil and Gas Act, it was in the 40s, early 40s. It's pretty outdated, too. But it was originally an outshoot of the mining industry. And then eventually it became important enough to have oil and gas, but then the Oil and Gas Board consisted of six people, all who had to be professionals in the oil industry, and it specified they had to be in production or sales or drilling, whatever, but nobody but oil people, professional oil people. Finally, not too long ago, they added one more, and it had to be somebody interested in agriculture. There's nothing, in any region of the bank, the Oil and Gas Division has any expertise in municipal affairs, urban situations. The history of it did not arise in that manner. The only thing, that whole book of regulations that Mr. Foreman showed, there's about 184 regulations that pertain to oil and gas activities and what you do and what you don't do. None of them specify something particular about urban situations compared to anywhere else in the state. Can I ask you, the cases that you cite from sister jurisdictions that you just kind of blanket statements say they're similar situations. I haven't read these cases yet. Are there any that are on point with respect to being home rule or something similar in nature? I don't really think they're all that powerful cases. I'm not really. They're just on that subject. Okay. Maybe I won't read them then. They're not very relevant. Sorry to say. But the only two things in all those regulations that pertain to municipal affairs compared to any place in the state says the consent of the city is required. A certified copy of the consent of the city. It doesn't say it has to be certified that it didn't meet the requirements of this sentence. It's been a long time ago. What about the sentence? It says the municipality does not have the authority to refuse the permit where all conditions have been met. Well, your honor, I think that's an interpretation that the city relied on their own ordinance. They had to be involved in the ordinance that specifically said if you do this, you get a permit. The people did all that. The city stipulated they did all that. And the it wasn't an issue. The city just didn't ever get around to acting on that. And the court said if you're going to adopt an ordinance, you should follow your own ordinance. But they didn't say that the city couldn't prohibit it. They said it wasn't an issue. The issue was once they had regulated it and had conceded that all conditions had been met, then they became ministerialized because that's the way that's the posture the case was in. Nobody posed the issue whether zoning ordinance had anything to do with that situation or even any issue of prohibition because there wasn't any prohibition. It just wasn't the case. That was the the I'm not asserting. One is that there's a lot of authority for municipalities to act in the areas we're talking about. The oil, I mean the zoning ordinance, zoning statute says they can prohibit regulate the location, usage of businesses, trades. It clearly says they can do all that stuff. It clearly says prohibit. Where's the word prohibit and what statute is it? It's in the zoning statute. It's in the municipal code. It's in our briefs, both of them. It's Should I go on? Sure. So I thought maybe that the plan was arguing that they had a permit before the annexation, therefore it was grandfathered in and we had to honor it because it was issued first in time. Well, that may or may not be the case, but that's a separate cause of action. It has to be pledged separately. If somebody relies on zoning and then rightfully relies on, not knowing that the zoning is going to change or there's going to be some change that they do, let's say they do know, but they run and get a permit and it spends a lot of money knowing that it's going to change pretty soon, then that is a defense to their cause of action. I mean, this isn't a grandfathering situation. It's not part of this lawsuit. They could have alleged it, but they didn't. There's a reason. They also have other accounts pending for money damages and for supposedly unconstitutional taking and things like that. That's not an issue here. It's simply, really, I think, can the city prohibit it versus regulate it in some manner, but not strictly prohibit it. And then comes the question, what is regulate? So they say it's allowed in this district, but not in that district? Well, if that's the case, then it's prohibited in this district. If they're going to make land uses, now counsel may be saying they're prohibited. They can prohibit in some places, but not others. Or they're saying they cannot prohibit it anywhere, but they can make some extremely severe restrictions in some areas. The idea of prohibit versus regulate, I don't think it's applicable to oil and gas. The locations, no matter what the thing is zoned for, no one wants to drill there unless they think there's oil there. If we had another section of town that was zoned for oil and gas, that wouldn't have solved this client's problem in one bit, because this client's in another location. He had the right to say that zoning is arbitrary and vicious with regard to his client's property. We don't have the facts for that. He didn't allege that. That's a case where it would depend on the facts of this specific case. It could be that this was a very big zone, incorporated area that had no development whatsoever and an oil well wouldn't even hurt anyone. Well, that would be a case where they allege, as applied to their specific property, it wasn't proper. But they didn't allege that. And anyway, if they did, it wouldn't be before the court today. The issue of, say, prohibited person's regulation in the context of oil and gas, I don't think, makes a whole lot of sense. The Olympia Fields case was, as we also said, was a state-licensed daycare center in a town. And the Supreme Court said, well, they don't have any place anywhere in that town where they could have one of these. It was prohibited in all the districts of the town. And the Supreme Court said, that just wasn't right. The state had showed that they were in favor of daycare. And the court said that that instance, the state regulation prevailed over the city zoning. However, the Supreme Court also said that that wouldn't apply in every case. It also could be other situations, factual situations, where certain industries wouldn't be appropriate anywhere or certain activities wouldn't be appropriate anywhere in a town. And for another case, another day. A daycare center is a very benign activity. It's pretty hard to figure out why it's somewhere in your town. It needs to be in town because that's where the kids are. It doesn't make any sense to say nowhere in town. But zoning, it makes a lot of sense to say no oil wells in town. There's a lot of negatives with oil wells. There's lots of risks. There's possible spills. There's possible explosions. There's possible just there are in our briefs. Counsel says, well, we just presume that all oil wells are nuisances and therefore prohibit all oil wells flat out. Well, we don't presume they're nuisances, but we do think it's quite possible that there's no place in Carlisle where oil wells would be appropriate. This is not a very big town. It's got residential mixed all in with business. It's got it doesn't have any heavy industry. It has a light manufacturing that could potentially have a special use for oil. It doesn't mention oil, but it does say activities that could be explosive or cause fires or things like that could be applied for as a special use. Well, they didn't apply for a special use permit, but also, we don't know what part of town is in the industrial area unless we have a case relating to that specific, to their specific property. I just don't think it's the right thing to do to have a summary judgment saying the whole ordinance as applies to oil wells is invalid because of all the other places in town where you can't have an oil well. The real issue should be could you have an oil well where their property is? I mean, is it suitable for oil wells? And it could be, but that's not what's important. Oh, this idea of the state oil and gas regulations and locations of where you can drill. As you can see from this diagram, this is not a regulation to encourage production. This was designed to limit production, spread the wells out, keep people from drilling a bunch of them close together and spend all kinds of money sucking them all out and reach those properties. And so, this is actually to protect the oil industry from ruinous competition. It's a good thing, but it doesn't foster decreasing oil wells, it fosters spreading them out. I would submit that the number of acres of land in other non-nominal municipalities isn't particularly a very significant percentage of all the land in Illinois. The idea that that would significantly reduce well production, I think, takes a pretty big leap. Now, that we also don't know, the council says, well, they can't drill, slam drill from another location outside the city to get at that oil, but we don't know that. That's a fact question. He says, well, they shouldn't have to buy property or maybe they couldn't even buy property at the next expense. Well, we don't know that. The area of his lease is, we don't know how big it is, we don't know part of it's in the city and part of it's out of the city. If part of it's in the city and part of it's out of the city, he could drill from his own lease under that property. It's not been, I'm not saying it is, because I don't know either. I'm just saying those are a whole lot of factual things that should be brought up in this specific case rather than a blanket decision saying that because the city doesn't think there's any place where an oil well could be in Carlisle, that now oil wells can be everywhere in Carlisle, which is basically what that would be. And the zoning act is clearly a comprehensive scheme adopted by the legislature to promote municipal control of the land within its values. The idea of the buffer zone doesn't apply here because the county zone exists and so the buffer zone is only in place where there's not a county zone. The only reason I mentioned the county permit not being changed is because they seem to act like their permit was sort of grandfathered in because it was issued before a certain date. And I don't think that's the case. But maybe it wasn't grandfathered in if the county zoning has any... is viable. We just don't know that issue either, but it's not... The statute doesn't specifically give the city the absolute right to prohibit the use. It says to prohibit use is incompatible with the character of such districts. Is that right? Absolutely, yes. So what was the basis that this drawing was incompatible with the character of the district? Well, the incompatible with the character of a particular district, you'd have to know what the district is zoned for. We don't... We could say, for example, that if it was an area that was zoned for R1 and it was filled up with houses, it would be pretty much incompatible. But if it was zoned for R1 and there's nothing there... So what were the facts of this case? What was there that was incompatible with the character? Honestly, I don't know. There's an annexation ordinance that said what it was going to be when it was annexed in, that it had to be rezoned to these certain characteristics. Most of it was to be residential. Some of it was to be commercial, and I don't know if there's any others. But it was farming. And so, you know, you could conceivably... If they had filed the suit based on the specific location, they might have won. And they still could. But that's not before the court. That's probably all I can think of. Mr. Foreman? Do you have a rebuttal? I agree that these statutes are rather old, but even old laws allow them to be enforced. It doesn't matter when it was enacted, if it's still valid, it's on the books. The Simpkins case is a 5th district case, which I believe is binding on the court. Your Honor hit the nail on the head when you read from page 19 of my brief on municipal coding that the only reference to the right to prohibit uses is with regards to the character of such districts. It's not a complete authorization to ban municipality-wide. The authority of the municipality is not a fact-dependent issue. That is the issue upon which we elected to proceed. So, you know, the character of that land and so forth is somewhat beside the point. The position is that oil and gas wells are bad, and essentially there's a presumption that they're bad, and therefore they're bad. And my whole reason is there are protections in the law for conditions of oil and gas wells if they persist that are deleterious. If you have a salt water leak, there's nuisance laws, there's other laws on the books that protect them, and the city put in act regulations to protect themselves from those conditions as well. They haven't done that. But this is a not-in-my-backyard approach to oil and gas wells. And I do not believe that municipalities have bad coding, plain and simple. I don't think it's in the zoning code. If you can look at that, I've got it verbatim in my brief. There's lots of references to regulate and so forth, but nothing I believe that applies to the prohibition, whereas the specific statute, 56-1, specifically references that municipalities may grant permits under such restrictions as will protect public and private property. That's a very explicit grant of authority to do something. And once they've given that, that's the reason why you don't find it anywhere else. I believe that there are sufficient protections that could be afforded. This is not a case where we're arguing that they could be grandfathered in. The slant drilling theory, I believe, does not have any real place. That requires the acquisition of rights of the third party, which we don't have. We can't compel that. The city can't condemn that for a private purpose. So, in summary, as I stated in two arguments, you can screw these together in a harmonious fashion. They have the right to impose restrictions. Where no restrictions exist, they have to consent. And even if we didn't have these two laws, which are more specific and on point, we still have the only thing that deals with offering, which I believe is that the local law would not allow the 3M state regulation. Thank you.